Filed 3/4/14  P. v. Domingo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FIDEL DELOSSANTO DOMINGO,<br><br>Defendant and Appellant. | C070627<br><br>(Super. Ct. No. 11F01211) |

A jury found defendant Fidel Delossanto Domingo guilty of committing numerous sex offenses, the victim being his minor foster daughter.  On appeal, he contends all counts must be reversed because the trial court erroneously instructed the jury with CALCRIM No. 318, even though "fresh complaint" evidence was introduced for a limited, nonhearsay purpose.  We affirm the judgment.

1

FACTS AND PROCEEDINGS

We dispense with a recitation of the facts underlying defendant's offenses and, instead, recite only those facts necessary to the resolution of this appeal.

Defendant was charged with four counts of sexual intercourse with a child 10 years old or younger, alleging sexual intercourse with the minor when she was seven, eight, nine, and 10 years old (Pen. Code, § 288.7, subd. (a)) and three counts of aggravated sexual assault on a child under the age of 14, for when the minor was 10 and 11 years old (Pen. Code, § 269, subd. (a)(1)).

Prior to trial, defendant moved to exclude evidence of the victim's extrajudicial statements about the offenses that she made to her friends and school administrator. Defense counsel acknowledged that the statements would be admissible as "fresh complaint" evidence but objected to their use as "excited utterances." The prosecutor represented that she intended to elicit only that the victim told them that defendant was engaging in sexual contact with her, and that the school administrator, as a mandated reporter, reported the matter to law enforcement officers. The prosecutor said she would not ask for "more detailed . . . descriptions as to what . . . the actual acts were." Defense counsel agreed to this limitation and the trial court denied the motion in limine seeking to exclude the victim's extrajudicial statements.

In the prosecutor's case-in-chief, the victim's friend testified that the victim told her defendant had been touching her inappropriately and that it had been happening for a long time. She also testified that the victim was crying and acted sad and worried when telling her this information. Later, the friend elaborated that it was "more than just touching." The school administrator testified that the victim told her something of a sexual nature had been going on, specifically, that defendant had raped her, and it had been going on since she was seven years old.

The victim testified that defendant began touching her sexually when she was seven years old and that it happened approximately 10 times when she was seven, 15 times when she was eight, and 20 times each year when she was nine years old. She further testified that defendant began having intercourse with her when she was 10 years old and that this happened several times when she was 10 and 11 years old.

After she reported the molestation, the victim made two pretext calls to defendant, wherein defendant admitted to inappropriate sexual contact with the victim on multiple occasions. The parties disputed the clarity of his admissions as to what type of contact occurred (touching versus intercourse) and when they occurred.

Defense counsel's theory at trial was that defendant had inappropriately touched the victim but only after she reached the age of 10 and, even then, he never had intercourse with her. This theory, if accepted by the jury, would have resulted in an acquittal of all the offenses as charged by the prosecution.

During cross examination, defense counsel elicited evidence that the victim had told the SAFE officer shortly after her initial disclosure of the molestation that the number of times defendant inappropriately touched her was about four or five and that she did not tell the officer that it was intercourse. In closing, defense counsel argued that the police officer who conducted the victim's pretext call to defendant was essentially "feeding" the victim accusations to wage against defendant during the call.

Defense counsel also suggested a motive behind the theory that the victim was exaggerating what had occurred. The victim had testified on direct examination that she moved in with her grandparents several days after she was interviewed by the police about the molestation. Her younger sister, however, remained in defendant's home. On cross examination, defense counsel elicited testimony that she has visits with her sister every other weekend and that she is sad she does not live with her anymore. Cross examination continued as follows:

"[Defense Counsel]: Okay. And the reason you two are no longer together is because of [defendant]; correct?

"A: Yes.

"[Defense Counsel]: So it's fair to say you're probably pretty angry at him. Isn't that true?

"A: No.

"[Defense Counsel]: In fact isn't it true that [defendant] never had sex with you before the age -- well, he never had sex with you at all in fact. Isn't that true? He never had sex with you; did he? [¶] . . . [¶]

"[A]: He did.

"[Defense Counsel]: He had inappropriate sexual contact with you by placing his penis on your vagina. But he never put it inside; did he?

"A: No. He did put it inside.

"[Defense Counsel]: You're actually making this all up because you're angry at him because of what has happened to you -- you're split from your sister -- you have to testify in front of a jury -- you are angry at him and you are making up parts of your story; is that correct?

"A: I just said I wasn't angry at him."

At the close of evidence, the prosecution amended the information according to proof. The information, as amended, charged defendant with three counts of lewd and lascivious acts on a child under the age of 14, alleging dates for when the minor was seven, eight, and nine years old (Pen. Code, § 288, subd. (a)); two counts of sexual intercourse with a child 10 years old or younger, for when the minor was 10 years old (Pen. Code, § 288.7, subd. (a)); and two counts of aggravated sexual assault on a child under the age of 14, for when the minor was 11 years old (Pen. Code, § 269, subd. (a)(1)). The jury found defendant guilty on all counts.

4

DISCUSSION

Defendant contends the trial court erroneously instructed the jury with CALCRIM No. 318, without a limitation. Essentially, he claims that the instruction, although generally legally correct, is improper here because "fresh complaint" evidence was introduced for a limited, nonhearsay purpose. We find no error.

The fresh complaint doctrine permits the admission of evidence of the victim's complaints disclosing the alleged sexual offense, not to prove the truth of the statement, but to establish the fact of, and the circumstances surrounding, the victim's complaint. (*People v. Brown* (1994) 8 Cal.4th 746, 749-750.) In the absence of such evidence, the jury may be left with the impression that the victim did not complain and, therefore, tend to doubt the veracity of the victim's testimony at trial. (*Id*. at p. 755.) On request, the trial court must instruct the jury as to the limited purpose for which the fresh complaint evidence was admitted. (*Id*. at p. 757.)

However, "[a] prior consistent statement is admissible as an exception to the hearsay rule if it is offered after admission into evidence of an inconsistent statement used to attack the witness's credibility and the consistent statement was made before the inconsistent statement, or when there is an express or implied charge that the witness's testimony was recently fabricated or influenced by bias or improper motive, and the statement was made before the fabrication, bias, or improper motive. (Evid. Code, §§ 791, 1236.)" (*People v. Kennedy* (2005) 36 Cal.4th 595, 614.)

Thus, CALCRIM No. 318 (as read to the jury herein) informs the jury: "You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable; [¶] And, 2. As evidence that the information in those earlier statements is true."

5

Here, the victim's extrajudicial statements made to her friend and school administrator were initially admitted in limine as fresh complaint evidence. However, after defense counsel's cross examination of the victim, in which he asked a series of questions designed to suggest her trial testimony was fabricated or exaggerated because she was angry at defendant for having to testify and live apart from her sister, the evidence became admissible as prior consistent statements and could be used by the jury for the truth asserted therein. (See *People v. Bunyard* (1988) 45 Cal.3d 1189, 1209 [mere asking of questions may raise implied charge of improper motive invoking Evidence Code section 791].)

In limine rulings are necessarily tentative, as the court retains discretion to make different rulings as the evidence unfolds. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1174.) In this case, the basis for the admissibility of the extrajudicial statements changed during cross examination. Thus, under the circumstances herein, the trial court did not err by giving CALCRIM No. 318, without limitation.

In any event, if, arguably, the instruction needed limitation in any way to account for the limited admissibility of fresh complaint evidence, defense counsel was required to request it. (*People v. Manning* (2008) 165 Cal.App.4th 870, 880.) He did not do so and the trial court has no duty to give a limiting instruction for fresh complaint evidence unless it is requested. (*Ibid*.)

DISPOSITION

The judgment is affirmed.


      HULL      , Acting P. J.


We concur:


      ROBIE      , J.


      HOCH      , J.